WITCOMBE, McGEACHIN & Co. *v.* UNITED STATES (No. 813).[1]

1. FIGURED COTTON CLOTH KNOWN AS MADRAS GOODS.

   Paragraph 320, tariff act of 1909, makes provision for counting the threads in the fabrics of the importation, and the provision is to the effect that in ascertaining the count of threads per square inch the ordinary as well as the extraordinary threads are to be counted, and counted whether they are clipped or unclipped.

2. TEXTURE OF THE FABRIC.

   The texture of the fabric is to be found by counting the threads in one repeat of the pattern and then dividing this result by the number of inches these threads occupy in the cloth.    This is to determine the texture not according to the count in the most or the least compact part of the fabric, but according to the average count of the whole.

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7289 (T. D. 31966).

[Reversed.]

*Comstock & Washburn* (*Albert H. Washburn* and *George J. Puckhafer* of counsel) for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Thomas J. Doherty*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns a cotton fabric known as madras muslin.    It was assessed for dutiable purposes under paragraphs 316 and 323 of

---

[1] Reported in T. D. 32563 (22 Treas. Dec., 912).

the tariff act of 1909 as cotton cloth containing over 100 and not over 150 threads per square inch, figured by the introduction of threads other than the ordinary warp and filling. It is claimed to be dutiable under paragraphs 316 and 323 of said act as cotton cloth counting over 50 and not over 100 threads per square inch, figured by the introduction of threads other than the ordinary warp and filling.

The sole issue in the case, therefore, is the proper count of threads per square inch in order to ascertain the applicable rate of duty.

In common with all the so-called countable provisions of the cotton schedule, paragraph 316 levies duty upon cotton fabrics according to the count of threads per square inch. The language of the paragraph, similar in import to that of the other so-called countable provisions, is, in so far as pertinent, as follows:

316. Cotton cloth, * * * exceeding one hundred and not exceeding one hundred and fifty threads to the square inch, counting the warp and filling, * * *.

The only statutory prescription as to the counting of such threads is found in paragraph 320 of the tariff act of 1909, which is new in tariff legislation and which reads:

320. * * * In determining the count of threads to the square inch in cotton cloth, all the warp and filling threads, whether ordinary or other than ordinary, and whether clipped or unclipped, shall be counted. * * *

Madras muslins, madras curtain goods, and other similarly figured cotton fabrics are appropriately described by Thomas R. Ashenhurst in his work upon Design in Textile Fabrics, as follows:

A light fabric figured by the insertion of thick weft threads, which are cut away where there is to be no figure.

The same writer described madras muslin as follows:

One class of fabrics, which gives pretty effects upon light cloth, is known as madras muslin. This is a very light texture indeed, with a figure formed by the introduction of a thick thread of weft into the ground and then cut away where no figure is formed so that it is really an alternation of thick, or moderately thick, and very thin, light cloth. Similar effects are also produced in fancy-colored goods, two or even three colors of weft being employed to form figures, sometimes one weaving plain into the ground cloth and the other figuring upon it, and sometimes both entering partly into the ground cloth and figuring alternately; and, as in the previous case, when no figure is being formed the extra material, which would otherwise go to the back, is cut away.

The goods as imported, of course, have been subjected to the cutting or clipping process, which is an essential one to the completion of the fabric and adds to its value, attractiveness, and utility in ultimate use.

In the process of fabrication the introduction of every one of these extraordinary weft threads, or parts thereof, constituting a different color, whether overlapping one another in the slightest degree, and whether or not extending entirely across the fabric when completed and clipped, or whether extending only across a very fractional por-

tion thereof, is introduced by the throwing of the shuttle entirely across the fabric and in every case the consumption thereby of a weft thread extending from edge to edge of the fabric. The material consumed, therefore, in the introduction of every one of these extraordinary weft threads is of the same length, whatever the length of the remaining portion thereof in the fabric may be after being clipped, as the ordinary weft threads. The relative value of the material used in each thread is the same. The introduction of each of such extraordinary threads, however, as found in the article when imported, clipped, is more expensive, in that its appearance in the fabric is attended not alone by the cost of the weaving but the additional cost of the clipping. Upon principle, therefore, these extraordinary weft threads, though appearing a very insignificant portion of the fabric as imported, should, by reason of the facts stated, though other than ordinary and clipped, be rated for dutiable purposes equally with the ordinary weft threads.

It was held by the United States Circuit Court, Southern District of New York, in Maclea Co. v. United States (167 Fed. Rep., 688), from which no appeal was taken, that the word "threads" as used in the provisions of the cotton schedule included all yarns and other filaments of textile fiber employed to form figures, as in madras fabrications.

It was held in United States v. Rusch & Co. (167 Fed. Rep., 523) that in determining the count of threads per square inch under provisions of the cotton schedule of the tariff act of 1897 that these extraordinary threads introduced in addition to the ordinary warp and filling threads to form a figure should not be counted.

Undoubtedly the provision relative to the count of such threads, introduced as a part of paragraph 320 of the tariff act of 1909, was prompted by this decision, and the purpose upon the part of Congress to effect that in ascertaining the count of threads per square inch in cotton fabrics, as precisely expressed in the provision itself, the ordinary as well as the extraordinary threads should be counted, and that whether clipped or unclipped.

There is no doubt or question made in this case, or possible, from a clear reading of the provision itself, as to the intent of Congress in its enactment.

After the decision in the Rusch & Co. case, *supra*, under the tariff act of 1897, these extraordinary threads received no consideration whatsoever in the determination of the count of threads per square inch of cotton fabrics. In madras goods, as in the samples before this court, these threads constitute the greater part of the value and ofttimes of the material of the fabric. It was, therefore, undoubtedly the intention of the Congress that, in the ascertainment of the dutiable particulars of a cotton fabric, these threads should be considered,

and Congress expressed that intention as to the count of threads by the enactment of the foregoing provision.

The Congress, however, did not in this or any other provision of the law, directly or by implication, express any intention as to the manner in which these threads were to be counted. That was left open as a matter of practical administration of the customs laws.

The issue here presented involves a determination of the proper method of count in such cases.

It is stipulated in the record that the foundation of the imported article counts less than 100 threads to the square inch; that the count of threads in the foundation, plus the count of threads in one color introduced to form a figure, is less than 100 threads to the square inch, and that, where there are two colors introduced to form a figure, the count is more than 100 threads to the square inch.

The result of the method of fabrication of the imported goods represented by the particular samples is that in some minor portions of the area thereof the goods count over 100 threads to the square inch, as where two colors are introduced to form a figure, and, as to the major part of the area of the fabric, consisting of the ordinary warp and filling thread alone, or of the same with a single color introduced to form a figure, the count is in each case less than 100 threads to the square inch.

It is the contention of the Government herein that that area or any part of the fabric, however small, wherein the highest possible count of threads per square inch is found, shall be taken as determinative of the count of threads per square inch of the fabric for dutiable purposes. The Board of General Appraisers upheld this contention.

It is the contention of the importer, appellant, that either the count should be had in that portion of the fabric wherein there is the least number of threads per square inch, or that the ascertainment should be had in such a manner as to represent the count of threads per square inch in the most substantial portion or area of the fabric.

It does not seem to the court that either of these contentions is fair or just to both parties, unless it be that the last contention of appellant may be construed to imply the average count of threads in the fabric.

The rule of law determinative of the conclusion of the court in such cases is well settled. We think that in taking either the count of threads in the most compact or in the least compact portion of the fabric is unjust and unfair to one party or the other to the controversy. Such a rule should not be adopted under the well-settled rules of statutory construction. Upon this subject it has been said:

In the consideration of the provisions of any statute they ought to receive such a reasonable construction, if the words and subject matter will admit of it, as that the existing rights of the public, or of individuals, be not infringed. Considerations of what is reasonable, convenient, or causes hardship and injustice have a potent influ-

ence in many cases. It is always assumed that the legislature aims to promote convenience; to enact only what is reasonable and just. * * * Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship, or injustice; * * *.—Lewis's Sutherland Statutory Construction, vol. 2, secs. 488 and 490.

Madras muslins, madras curtains, and similar goods, wherein extraordinary threads are introduced in the weft for the purposes of forming figures, whether clipped or unclipped, are uniformly made by repetitions of the pattern or patterns constituting the figure or figures of the fabric. These repetitions are of necessity introduced by the same machine, or part thereof, consuming and introducing into the fabric of necessity into each repeat of the pattern the identical number of weft threads, ordinary and extraordinary. It results that in each repeat of the pattern or patterns there is the identical number of weft threads, ordinary and extraordinary. Each of these extraordinary or figure threads is represented in the fabric, as imported, by a weft thread, which may or may not extend from edge to edge of the fabric, or which may or may not overlap wholly or in part another extraordinary weft thread, or which may appear in but a very minor part of the fabric, all of which, known, are easily susceptible of count, and the count of a single repeat of the pattern or patterns of the fabric is a count of every thread entering into its fabrication, ordinary and extraordinary, clipped and unclipped. Verification of the count in any repeat of the pattern may be had by counting another repeat of the same. The exact and precise number of warp and filling threads, therefore, in any such fabric can be accurately determined by a count of such in one or more repeats of each figure of the fabric and dividing these by the length in inches of the space occupied by the pattern or patterns of the fabric.

The rule is one long since employed by manufacturers of such goods, and is expressed in the elementary work of instruction upon textile design by E. A. Posselt. In the work of that author styled "Technology of Textile Design," at page 259, the rule is stated as follows:

Fabrics having a fancy arrangement with regard to their threads frequently require to have the number of threads ascertained in more than 1 inch. In some fabrics the texture must be found by counting the number of threads in one repeat of the pattern and then dividing this result by the number of inches these threads occupy in the fabric.

The employment of this rule in the ascertainment before us perfectly satisfies the injunction of the statute in that in its exercise, in the determination of threads per square inch in any woven fabric, all the threads, warp and filling, whether ordinary or other than ordinary, and whether clipped or unclipped, are counted and are taken into consideration. The rule is not difficult of execution, results in no absurdity, inconvenience, or hardship, and is manifestly fair and just to all parties in that in the ascertainment or count of threads to

the square inch each and every thread in the fabric is taken into consideration in the count, which is a determination not according to the count in the most or least compact part thereof, but according to the average count of the whole.

We think, therefore, that this is a fair construction of the provision as adopted by Congress, that it leads to no absurdity, injustice, or hardship, and is in full accord with the congressional intent.

The decision of the Board of General Appraisers is *reversed.*